Leonard MADISON, Administrator of the
Estate of Lula Mae Madison,
Deceased, Appellant,

Oscar Walker, Administrator of the
Estate of Eliza Walker,
Deceased, Appellant,

Willie H. Moody, Administrator of the
Estate of Geraldine Moody,
Deceased, Appellant,

Willie D. Kelly, Administrator of the
Estate of Shirley J. Kelly,
Deceased, Appellant,

v.

UNITED STATES of America, Appellee.

Carl McMICHAEL, Administrator of the
Estate of Emma McMichael,
Deceased, Appellant,

Mrs. Lamar Bartlett; Mr. Winfred Lowe,
Administrator of the Estate of Mrs.
Thelma Lowe, Deceased; Mrs. Edna
Rogers; Mrs. Flora Weaver; and Mrs.
Georgia Ray, Appellants,

v.

UNITED STATES of America, Appellee.

Nos. 81-1980, 81-2000.

United States Court of Appeals,
Eighth Circuit.

Submitted March 11, 1982.

Decided June 3, 1982.

Rehearing Denied Aug. 5, 1982.

McMath & Leatherman, P. A. by James Bruce McMath, Little Rock, Ark., for appellants McMichael et al.

Whetstone & Whetstone by Bernard Whetstone, Little Rock, Ark., for appellant Madison.

Larry R. McCord, U. S. Atty., Floyd Clardy, Sp. Asst. U. S. Atty., Fort Smith, Ark., for appellee.

Before HEANEY, BRIGHT and HENLEY, Circuit Judges.

HEANEY, Circuit Judge.

These consolidated cases were filed individually against the United States under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346, 2671–2678, 2680. The plaintiffs seek damages for injuries and deaths caused by an explosion near Camden, Arkansas, on March 8, 1976. The explosion occurred at a plant where Celesco Industries, Inc., an independent contractor, was producing ammunition pursuant to a contract with the United States. The plaintiffs appeal from the district court's order granting the government's motion for summary judgment on the ground that the plaintiffs' tort claims were barred by the discretionary function exception to the FTCA. We affirm in part, reverse in part and remand for proceedings consistent with this opinion.

## I.

On June 20, 1975, the United States awarded a contract to Celesco to produce highly explosive M123AL photo-flash cartridges. Celesco was the only company to submit a bid. The contract provided that Celesco was to produce 36,000 units, and it was to be paid $900,957.

Before the contract was awarded, the government evaluated Celesco to determine if it possessed the necessary technical and production capabilities to properly manufacture the ammunition. A safety survey was also prepared by Lawrence Del Regno, a Defense Contract Administration Services regional officer. The survey indicated that Celesco could comply with the safety requirements of the contract. It also stated that Del Regno had personally made the required on-site evaluation of the Celesco plant. In fact, he had not visited the plant during the pre-award survey, although he had previously viewed the facilities.

After the contract was awarded, Del Regno and the quality assurance representatives under his supervision were responsible for continuing to monitor Celesco's compliance with the contract's safety requirements.[1] According to the parties' stipulation, however, these government officials made only periodic inspections and permit-

---

1. Pursuant to Armed Services Procedure Regulation 7.104–79 (32 C.F.R. § 7.104–79), the safety standards of the Department of Defense Contractor's Safety Manual for Ammunition, Explosives and Related Dangerous Materials (hereafter Contractor's Safety Manual) were incorporated into the contract.

ted Celesco to continue its operations despite numerous safety violations.

On March 8, 1976, as a thunderstorm was approaching,[2] an explosion occurred in the cartridge assembly building. Seven employees were killed; five others were seriously injured. Other employees suffered less serious injuries. The building was completely destroyed. Celesco never resumed production of the photo-flash cartridges and, apparently, has failed to fulfill its contractual obligations.

The plaintiffs filed suit against the United States, advancing three theories of liability under the FTCA. They alleged that the government was negligent in (1) awarding a contract to produce a highly dangerous commodity to Celesco, which possessed neither the necessary skills nor proper facilities; (2) promulgating inadequate safety standards in the Department of Defense Contractor's Safety Manual; and (3) failing to enforce Celesco's compliance with the safety requirements of the Contractor's Safety Manual.

The United States moved for summary judgment on the ground that the plaintiffs' claims were barred by the discretionary function exemption of the FTCA.[3] The district court granted the motion. The plaintiffs now appeal.

## II.

Summary judgment should not be granted unless there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *Ralph's Distributing Co. v. AMF, Inc.*, 667 F.2d 670, 672 (8th Cir. 1981). The drastic nature of the summary judgment remedy imposes on the moving party the burden of establishing, with such clarity as to leave no room for controversy, that the plaintiffs are not entitled to recover under any circumstances. *Id.* All evidence must be viewed in the light most favorable to the party opposing summary judgment. *Id.*

## III.

Under the FTCA, the United States is liable for any "negligent or wrongful act or omission of any employee of the government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). There are, however, certain exceptions enumerated in the FTCA to the government's liability for its employees' negligence. In this case, the United States

2. The cartridges being produced were very sensitive to moisture. There was conflicting testimony in the court below on how close the storm was to the plant. The Occupational Safety and Health Administration, however, cited Celesco for failing to maintain written safety procedures for shutting down operations in the event of adverse weather.

3. For purposes of the summary judgment motion, the parties entered into the following stipulation:

That at the time of the injuries in question, Celesco, Inc., was operating the munitions plant in question under contract with the Department of Defense. Its relationship with the Department of Defense was that of an independent contractor. The product being produced was a photo-flash cartridge which is potentially explosive. The activity was one which would generally be recognized as being inherently dangerous or ultrahazardous. Because of the volatile nature of the product, special skill and special facilities are required to manufacture the cartridges in an acceptable and safe manner. Additionally, there are generally recognized procedures and precautions which should be utilized in the manufacturing process.

It is further stipulated that Celesco did not have the requisite skills; that the facilities in question were inadequate; and that the generally recognized procedures were not followed; that government was aware, or could have learned of the various inadequacies mentioned above through its pre-award survey, its three on-sight assurance inspectors who were present throughout the operation, and through periodic spot-check inspections.

Lastly, it is stipulated that the contract with Celesco contained numerous safety regulations and requirements which the contract required Celesco to comply with; that the requirements were inadequate in some respects, and that they were not enforced by the Department of Defense.

The question of proximate cause between any failure above-mentioned and the injuries is assumed to be satisfied.

seeks to invoke the discretionary act exception, 28 U.S.C. § 2680(a).[4]

The United States cannot be liable under the FTCA for a discretionary function or duty performed by the government. *Dalehite v. United States,* 346 U.S. 15, 18, 73 S.Ct. 956, 959, 97 L.Ed. 1427 (1953). In defining a discretionary function, the *Dalehite* Court distinguished between decisions made on the planning level and those made on the operational level. *Id.* at 35–42, 73 S.Ct. at 967–971. The United States is immune from suit with respect to the exercise of discretion at the planning level, but it may be sued under the FTCA for negligent decisions made at the operational level. *Id.; Indian Towing Company v. United States,* 350 U.S. 61, 64, 76 S.Ct. 122, 124, 100 L.Ed. 48 (1955).

The planning level consists of decisions involving questions of policy, that is, the evaluation of the financial, political, economic and social effects of a plan. *See, e.g., Dalehite v. United States, supra,* 346 U.S. 35–42, 73 S.Ct. 967–971; *Swanson v. United States,* 229 F.Supp. 217, 220 (N.D. Cal.1964). On the other hand, the operational level involves decisions relating to the normal day-to-day operations of government. *See, e.g., Dalehite v. United States, supra,* 346 U.S. at 35–42, 73 S.Ct. at 967–971; *Swanson v. United States, supra,* 229 F.Supp. at 220.

Plaintiffs' three theories of recovery raise two major questions. First, are the negligent acts or omissions discretionary functions which are immune from suit under the FTCA. Second, if—and only if—these acts or omissions are not discretionary functions, are the theories cognizable under the law of Arkansas, the state where the tort occurred.[5]

The district court reached only the first question because it held that the discretionary function exception barred recovery under all three of plaintiffs' negligence theories, and granted summary judgment in favor of the United States. We agree that the awarding of the government contract and the promulgating of the Department of Defense Contractor's Safety Manual and regulations are exempt discretionary functions. These acts were planning level decisions involving the weighing of various facts and policies and, hence, the United States is not liable under the FTCA even if the responsible governmental employees performed their duties negligently. *See, e.g., Myers & Myers, Inc. v. United States Postal Service,* 527 F.2d 1252, 1256 (2d Cir. 1975) (contract awarded); *Scanwell Laboratories, Inc. v. Thomas,* 521 F.2d 941, 948 (D.C.Cir.1975), *cert. denied,* 425 U.S. 910, 96 S.Ct. 1507, 47 L.Ed.2d 761 (1976) (contract awarded); *Market Insurance Co. v. United States,* 415 F.2d 459, 463–464 (5th Cir. 1969) (safety regulations and manual issued). This conclusion disposes of plaintiffs' first two theories of recovery and, thus, we need not consider whether they are cognizable under Arkansas law.

We cannot, however, agree with the district court's conclusion that the plaintiffs' third theory of negligence is also barred by the discretionary function exemption. The parties stipulated for purposes of the summary judgment motion that the United States failed to enforce compliance with the regulations of the Contractor's Safety Manual. In determining that these failures were exempt discretionary acts, the district court did not conclude, or cite any authority indicating that, these decisions

---

4. Pursuant to 28 U.S.C. § 2680(a), the United States is not liable under the FTCA for

Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employ-

ee of the Government, whether or not the discretion involved be abused.

5. Pursuant to 28 U.S.C. § 1346(b), the United States is liable under the FTCA for the negligence of government employees acting within the scope of their duties "under circumstances where the United States, if a private person, would be liable to the claimant *in accordance with the law of the place where the act or omission occurred.*" (Emphasis added.)

were made at the planning level. Indeed, it did not even use the traditional discretionary function analysis which distinguishes between planning and operational level decisions. Instead, it relied solely on a line of cases stating that the government has only the right—not the duty—to enforce safety rules. *E.g., Zabala Clemente v. United States,* 567 F.2d 1140, 1149 (1st Cir.), *cert. denied,* 435 U.S. 1006, 98 S.Ct. 1876, 56 L.Ed.2d 388 (1978); *Gibson v. United States,* 567 F.2d 1237, 1243 (3d Cir. 1977), *cert. denied,* 436 U.S. 925, 98 S.Ct. 2819, 56 L.Ed.2d 768 (1978); *Market Insurance Co. v. United States, supra,* 415 F.2d at 463. This reliance was misplaced.

 The cases relied on by the district court are plainly distinguishable from the one here. In those cases, the plaintiffs sought to recover from the government for the negligence of independent contractors on theories of vicarious, absolute or strict liability. It is beyond cavil that the United States cannot be held vicariously, absolutely or strictly liable under the FTCA for the negligence of independent contractors employed by the government. *See* 28 U.S.C. §§ 1346, 2671. *See also, e.g., Aretz v. United States,* 604 F.2d 417, 425–427 (5th Cir. 1979).

In contrast, here plaintiffs contend that under Arkansas law, the United States, as an employer of an independent contractor, is liable for its own negligence in permitting Celesco to conduct an inherently dangerous or ultrahazardous activity without complying with applicable safety regulations.[6] Precisely such a theory was sustained in *Barron v. United States,* 473 F.Supp. 1077 (D.Haw.1979), *aff'd,* 654 F.2d 644 (9th Cir. 1981).

In *Barron,* the district court held that the United States was liable under the FTCA for injuries suffered by an employee of an independent contractor constructing a network of sewer pipes for the Navy. *Id.* at 1082–1083. It predicated the government's liability on its conclusion that under Hawaii law, an owner who hires an independent contractor is liable for injuries incurred by the contractor's employees if the owner fails to prevent the contractor from conducting extrahazardous activities without taking proper safety precautions. *Id.*

In finding that the government was negligent, the *Barron* court emphasized several factors. *Id.* at 1083–1084. First, the Navy had assigned personnel to investigate the contractor's compliance with federal safety regulations. Second, inspections had revealed that the contractor was disregarding its safety obligations and endangering lives. Third, the Navy officials knew that the contractor's work was extrahazardous when not performed in conformity with applicable regulations. Fourth, the Navy had several alternatives available, including suspending or stopping the contractor's work,[7] to enforce compliance with safety rules. Finally, despite these factors, the Navy did nothing to avert the disaster.

In determining whether the government was immune from suit under the FTCA in these circumstances, the *Barron* district court held that the Navy's failure to take action to enforce federal safety require-

---

6. For purposes of reviewing the discretionary function exception issue, we assume—without deciding—that under Arkansas law, this theory of liability is cognizable and the production of photo-flash cartridges is an inherently dangerous or ultrahazardous activity.

7. The district court in *Barron v. United States,* 473 F.Supp. 1077, 1083 (D.Haw.1979), *aff'd,* 654 F.2d 644 (9th Cir. 1981), specifically observed that the contract between the government and the independent contractor provided:
 The Contracting Officer will notify the Contractor of any noncompliance with the foregoing provisions and the action to be taken. The Contractor shall, after receipt of such notice, immediately take corrective action. Such notice, when delivered to the Contractor or his representative at the site of the work, shall be deemed sufficient for the purpose. If the Contractor fails or refuses to comply promptly, the Contracting Officer may issue an order stopping all or part of the work until satisfactory corrective action has been taken. No part of the time lost due to any such stop orders shall be made the subject of claim for extension of time or for excess costs or damages by the Contractor. The government's contract with Celesco apparently contained the same language.

ments when it was clearly mandated by the interests of safety was an operational level decision not protected by the discretionary function exception. *Id.* at 1084 n.3. Moreover, in contrast to the inapposite cases relied on here by the court below, the *Barron* court found that the Navy had not only the right, but also the duty to enforce compliance with governmental safety regulations, and that it had breached that duty. *Id.* at 1084. The Ninth Circuit upheld these decisions by the district court. *Barron v. United States, supra,* 654 F.2d at 646–647. *Accord, McGarry v. United States,* 549 F.2d 587, 591 (9th Cir. 1976), *cert. denied,* 434 U.S. 922, 98 S.Ct. 398, 54 L.Ed.2d 279 (1977).

We believe that the approach taken in *Barron* is the proper one. *See Neal v. Bergland,* 646 F.2d 1178, 1183 (6th Cir. 1981) (citing with approval the district court opinion in *Barron* ). *See also Aretz v. United States, supra,* 604 F.2d at 427–429; *Gibson v. United States, supra,* 567 F.2d at 1244–1245. The government may not have a legal obligation to promulgate safety rules and conduct inspections for compliance. But once it has exercised its discretion to adopt such rules and to conduct safety inspections, it is obligated in circumstances such as those allegedly present here to take reasonable steps to enforce compliance with the applicable safety regulations. *See, e.g., Indian Towing Co. v. United States, supra,* 350 U.S. at 69, 76 S.Ct. at 126; *Neal v. Bergland, supra,* 646 F.2d at 1182. The failure to fulfill that obligation when the interests of safety plainly mandate it is an operational level decision that is not immune from suit under the FTCA. Accordingly, the court below erred in granting summary judgment against plaintiffs' third theory of governmental negligence on the ground that it is barred by the discretionary function exemption.

It follows from this conclusion that we must consider the second major question presented by this claim; that is, whether under Arkansas law an employer of an independent contractor has a duty to use due care to prevent the contractor from conducting inherently dangerous or ultrahazardous activities without proper precau-

tions. The district court did not address this issue because of its disposition of the discretionary function exception question. Moreover, the parties have not fully briefed this state law issue on appeal. Therefore, we remand this case to the district court to determine whether this theory of recovery is cognizable under Arkansas law and, if so, whether the plaintiffs can establish their claim.

The decision of the district court, therefore, is affirmed in part, reversed in part and remanded for proceedings consistent with this opinion.