See also D.C., 612 F.Supp. 962.

ST. JUDE MEDICAL, INC., Plaintiff,

v.

INTERMEDICS, INC. and Carbomedics, Inc., Defendants.

Civ. No. 4–84–267.

United States District Court,
D. Minnesota,
Fourth Division.

June 28, 1985.

R. Walter Bachman, Lindquist & Vennum, and John D. Levine, and Michael E. Bress, Dorsey & Whitney, Minneapolis, Minn., for St. Jude Medical, Inc.

Edmund McCabe, and Sydelle Pittas, McCabe and Gordon, Boston, Mass., and Leon Goodrich, Oppenheimer, Wolff, Foster, Shepard & Donnelly, St. Paul, Minn., for CarboMedics, Inc. and Intermedics, Inc.

## MEMORANDUM OPINION AND ORDER

DIANA E. MURPHY, District Judge.

This action arises from a manufacturing relationship involving St. Jude Medical, Inc.

(St. Jude), Intermedics, Inc. (Intermedics), and CarboMedics, Inc. (CarboMedics).[1] St. Jude, in its amended complaint, charges CarboMedics and Intermedics with violations of the Sherman and Clayton Acts, misappropriation of trade secrets by illegal means, conversion, and unfair competition. On October 10, 1984, this court granted St. Jude's motion for a preliminary injunction and ordered CarboMedics to begin to manufacture and deliver carbon coated heart valve components to St. Jude; this order was affirmed by the Eighth Circuit Court of Appeals on June 10, 1985.[2] The matter is now before the court on the motion of CarboMedics for partial summary judgment on the fifth cause of action, breach of the parties' supply contract, in St. Jude's amended complaint.[3]

## I.

In its fifth cause of action, St. Jude alleges that CarboMedics breached the parties' 1983 supply contract in various ways. It charges that the supply contract specified that CarboMedics would sell it a minimum of 24,100 heart valve component sets during 1983, but that CarboMedics refused to deliver approximately 3,900 heart valve sets. St. Jude also alleges that CarboMedics breached the terms of the supply contract by its unilateral termination. It states in particular that CarboMedics violated paragraphs 10.1 and 11.0 of the agreement.

Paragraph 10.1 governs termination and provides that the "obligation of Manufacturer [CarboMedics] under this agreement may not be terminated unilaterally" by CarboMedics until such time as CarboMedics has:

1) informed St. Jude of CarboMedics' intent to terminate:

2) determined from St. Jude an approximation of the length of time St. Jude will require to develop an alternative manufacturing source; and

3) supplied to St. Jude carbon-coated heart valve components of acceptable quality and in sufficient quantities to meet St. Jude's requirements for the time St. Jude estimates will be necessary to develop an alternative manufacturing source.

Paragraph 11.0 contains limitations on CarboMedics due to its position as sole manufacturer of carbon components and provides:

Sole Source Limitation. Manufacturer hereby recognizes that, as a practical matter, it is currently the sole manufacturing source available to Buyer for the manufacture of coated mechanical heart valve components utilizing pyrolytic carbon as an essential manufacturing component. In view of this, Manufacturer hereby agrees not to utilize this position as unfair or unreasonable leverage in future negotiations with Buyer consider-

1. Two other actions have arisen from this manufacturing relationship. On March 2, 1984, CarboMedics brought suit against St. Jude in the United States District Court, Western District of Texas, alleging that St. Jude had misappropriated CarboMedics' trade secrets and breached several confidentiality agreements. This case was subsequently consolidated in Minnesota with the suit now before the court. On July 3, 1984, CarboMedics and GA Technologies, Inc. (GA) brought another action, Civil No. 4-84-643, against St. Jude, alleging patent infringement; St. Jude has counterclaimed. Civil No. 4-84-643 was then consolidated with the other two cases for pretrial management only.

2. Many motions have been subsequently decided. On April 3, 1985, the court denied the motion of CarboMedics and Intermedics to dismiss St. Jude's first and second causes of action

in the amended complaint. At the same time, the court dismissed the third and fourth causes of action for failure to state a claim upon which relief can be granted, but gave St. Jude leave to file a second amended complaint with respect to its Section 2 Sherman Act claims. The court also denied St. Jude's motion for sanctions relating to the Rule 12 motion. Subsequently, the court denied the motion of CarboMedics and Intermedics for partial summary judgment on the antitrust claims in St. Jude's first and second causes of action in its amended complaint.

3. Arguments on CarboMedics' motion were heard on an accelerated basis at a previously scheduled hearing concerning other matters. At the hearing, St. Jude requested and received additional time in which to submit a response. Both parties then submitted reply materials.

ing price and/or quantity of coated mechanical heart valve components to be manufactured and delivered, and further agrees not to discriminate against Buyer in comparison with other customers or manufacturers who purchase from Manufacturer various medical components manufactured by Manufacturer utilizing pyrolytic carbon.

St. Jude alleges that CarboMedics has breached this paragraph by unilaterally terminating its supply of products, making unreasonable demands for terms and prices of products, and offering discriminatorily favorable pricing to Hemex Scientific, Inc. (Hemex).

CarboMedics has submitted a statement of what it terms undisputed material facts concerning the history of the development of the double leaflet heart valve, the contractual relationship between it and St. Jude, and the rationale for and events of its termination of the 1983 supply agreement. It contends that summary judgment is appropriate because the plain language of the 1983 supply contract shows that it properly terminated the agreement and that it did not agree to supply components to St. Jude after December 31, 1983. It adds that if there is an agreement to supply components in 1984 and beyond, it is void for indefiniteness and lack of mutuality.

CarboMedics' motion focuses mainly on the requirements of paragraph 10.1. It asserts that it gave St. Jude the requisite notice by a letter, dated October 19, 1983, that Dr. Jack C. Bokros, CarboMedics' president, wrote to the president of St. Jude, Dr. Vern Rees. The letter informed Rees that St. Jude, by making pyrocarbon coated heart valve components, was infringing upon CarboMedics' patents. The letter stated that such infringement was cause for CarboMedics to terminate, and that if the infringement did not cease, the supply contract would be terminated as of October 19, 1983. See CarboMedics Ex. R. CarboMedics asserts that the record shows that St. Jude's response to this letter and its public admissions informed CarboMedics that St. Jude had enough components to

last beyond the December 31, 1983 expiration date of the contract and up to the time at which alternative manufacturing sources could be expected. Thus, CarboMedics asserts that it satisfied the second and third requirement of paragraph 10.1.

CarboMedics also asserts that St. Jude acknowledged in an interim contract on May 2, 1984, that CarboMedics' obligations to supply components in 1983 were completely satisfied.

St. Jude, on the other hand, contends that CarboMedics' statement of undisputed facts contains "unsupported and vigorously disputed factual allegations." It argues that CarboMedics must show not only that no fact issues exist as to its compliance with paragraph 10.1's termination procedures, but that no fact questions exist as to its right to terminate St. Jude in the first instance. St. Jude notes that Bokros' letter of October 14, 1983 referred to an alleged patent infringement as the sole reason for termination under paragraph 15.0. St. Jude maintains that there is no evidence before this court which shows that St. Jude has violated any CarboMedics' patent. Nor, according to St. Jude, is there undisputed evidence of trade secret violations.

In addition, St. Jude claims that there are issues of material fact as to the validity of CarboMedics' termination procedures. St. Jude states that Bokros' termination letter did not refer to paragraph 10.1 and did not call for any estimate of supply. It asserts that the October 25, 1983 letter of Dr. Rees to Intermedics' board chairman G. Russell Chambers did not discuss any estimate by St. Jude of the time needed by St. Jude to locate an alternate source of supply, but informed Chambers, among other things, that St. Jude sought to develop a long-term business relationship with CarboMedics and requested a meeting to discuss that relationship. See CarboMedics Ex. S. St. Jude asserts that statements made by it in its securities filings, press releases, and other public documents were not its response to CarboMedics, and also were never intended to exclude supply from CarboMedics.

Further, St. Jude contends that the language of the 1983 contract clearly imposes on CarboMedics an obligation of good faith negotiation and orderly termination of St. Jude's sole source of supply which extends beyond December 31, 1983. It also asserts that summary judgment is inappropriate when discovery is continuing.

## II.

In passing upon a motion for summary judgment, the court is required to view the facts in a light most favorable to the non-moving party, and the movant has the burden of establishing that no genuine issue of material fact remains and that the case may be decided as a matter of law. *Buller v. Buechler*, 706 F.2d 844, 846 (8th Cir. 1983); *Ralph's Distributing Co. v. AMF, Inc.*, 667 F.2d 670 (8th Cir.1981). The non-moving party is entitled to the benefit of all reasonable inferences to be drawn from the underlying facts disclosed in pleadings and affidavits. *Vette Co. v. Aetna Casualty & Surety Co.*, 612 F.2d 1076 (8th Cir.1980). The nonmoving party may not merely rest upon allegations or denials of the party's pleadings, however, but must set forth specific facts by affidavits or otherwise showing that there is a genuine issue for trial. *Burst v. Adolph Coors Co.*, 650 F.2d 930, 932 (8th Cir.1981).

■ CarboMedics seeks summary judgment upon St. Jude's fifth cause of action in its entirety, but it has not addressed that portion of the allegations which concerns discriminatory pricing structures in violation of paragraph 11.0 of the supply contract. Summary judgment is therefore inappropriate on that claim.

■ Nor has CarboMedics demonstrated that there is no genuine issue of material fact as to whether it had sufficient cause to cease supplying St. Jude. The language of paragraph 15.0 of the contract[4] may be construed to limit any remedies an aggrieved party may have to initiate a judicial proceeding. An issue of material fact remains as to whether that was indeed the parties' intent.

■ Questions of material fact also remain as to whether CarboMedics complied with the termination procedures of the contract. The court cannot conclude as a matter of law, that various public statements made by St. Jude, some dating many months before the termination and some occurring many months after, informed CarboMedics of St. Jude's estimate of time needed to develop an alternative manufacturing source. The relevance of these documents and the meaning of Dr. Rees' letter to G. Russell Chambers cannot properly be resolved upon the current motion. Moreover, the record at this point does not demonstrate that the parties clearly envisioned that all of the obligations of the contract would cease on December 31, 1983. Construing the language of the contract in a manner which grants St. Jude the benefit of all reasonable inferences, as it must on this motion, the court finds that various provisions of the parties' 1983 contract raise substantial issues as to whether CarboMedics, as St. Jude's sole source supplier, had an obligation to negotiate in good faith and to follow the termination procedures which continued past December 31, 1983.

■ While summary judgment is inappropriate on these matters, the court finds that one of St. Jude's claims may properly be decided as a matter of law. St. Jude alleges that CarboMedics breached the supply contract by failing to deliver 3,900 heart valve sets. St. Jude signed an interim supply agreement dated May 2, 1984, however, which specifically stated:

> SJM [St. Jude] acknowledges that CMI's [CarboMedics'] agreement to supply SJM

---

**4.** Paragraph 15.0 provides:

In the event of breach by either party of the terms and conditions of this Agreement to be performed by him, the other party shall be entitled, if it so elects, to institute and prosecute proceedings in any court of competent jurisdiction, either in law or equity, to obtain damages for any breach of this Agreement, or to enforce the specific performance thereof. Breach of the Agreement includes, but is not limited to, an infringement by one party of the patent(s) of the other.

with these CMI Components completely satisfies CMI's obligations to deliver, during calendar year 1983, CMI Components under the 1983 supply agreement.

CarboMedics argues that this language shows that St. Jude cannot now claim damages for the components scheduled to be delivered in 1983. In its responsive materials, St. Jude has failed to argue or demonstrate that this language somehow reserved its claim for damages based on CarboMedics' failure to deliver 3,900 heart valve sets in 1983. St. Jude merely noted that the interim agreement did not waive its claims regarding the "alternate source unilateral termination and remedy for breach of patent infringement provisions" of the 1983 supply contract. St. Jude's Memorandum in Opposition at p. 18. Accordingly, the court finds that, as a matter of law, St. Jude waived its rights to claim damages because of the failure of CarboMedics to deliver the minimum number of components during the year 1983.

## ORDER

Accordingly, based upon the above, and all the files, records, and proceedings herein,

IT IS HEREBY ORDERED that the motion of CarboMedics, Inc. for summary judgment is granted with respect to the allegations of St. Jude Medical, Inc. that CarboMedics breached the parties' 1983 supply agreement by failing to supply 3,900 heart valve sets. That claim is dismissed with prejudice. In all other respects, the motion for summary judgment is denied.