**Eric Scott WILL and Anne M. Will, Appellants,**

**v.**

**UNITED STATES of America, Appellee.**

**No. 87–1439.**

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 13, 1988.

Decided June 13, 1988.

David Steelman, Salem, Mo., for appellants.

Joseph B. Moore, Asst. U.S. Atty., St. Louis, Mo., for appellee.

Before HEANEY and WOLLMAN, Circuit Judges, and ROSS, Senior Circuit Judge.

WOLLMAN, Circuit Judge.

Eric Scott Will (Will) appeals from a district court [1] judgment that denied his claim for damages under the Federal Tort Claims Act (FTCA) for injuries he sustained while diving in the Ozark National Scenic Riverway Park (Park) in Missouri.[2] We affirm.

---

1. The Honorable H. Kenneth Wangelin, late a United States District Judge for the Eastern District of Missouri.

2. Because Will was a minor at the time of the accident, his mother, Anne M. Will, also brought an action for medical expenses in-

curred by Will prior to his eighteenth birthday. For the purpose of this appeal, it is unnecessary to separately address Anne Will's claim.

## I.

Part of the national park system, the Park is classified as a national riverway, meaning that it is a natural course of water marked by natural, cultural, and recreational resources of national significance. The Park contains two rivers, the Current River and the Jacks Fork River, which are 100 miles and 34 miles in length, respectively.

The diving accident in question occurred at the Flying W, which is designated by the Park as a primitive campsite. As such, it has no man-made improvements such as signs, trash containers, or bulletin boards. At the Flying W, the channel has created a natural swimming hole at a bend in the Current River. This is the only swimming hole on the Upper Current River that is reasonably accessible by vehicle and is one of the two most popular swimming holes on that part of the river.

The deepest part of the swimming hole is next to the tree-lined bluff. The tree from which Will dove is atop the bluff and has branches extending out over the swimming hole. At its deepest part, the bottom of the swimming hole is a solid level ledge of rock, with no protruding ledges and no logs or boulders projecting upward from the bottom. Some distance from the bluff the water becomes shallower as the river bottom begins to gradually angle upward toward the opposite bank. At that point, the bottom is composed of smooth gravel.

Swimming, jumping, or diving is not prohibited in most areas of the Park, including the Flying W. No signs warning of the dangers of diving are posted in the Park. As of the date of the accident, brochures and ranger contact were the only methods employed by the Park to notify Park users of the dangers of diving. It was generally left to the ranger's discretion to determine whether the hazards of diving in a particular situation warranted a warning. Will testified that he was never warned of the dangers of diving at the Flying W, either by brochure or by a ranger.

Will began swimming at the Flying W at age 11 or 12 and swam there at least a half dozen times a year for the next four or five years. He had been there at least four or five times in 1983 prior to the accident. During these previous visits, Will had jumped and dived from the bluff and the tree into the river and had seen others do the same.

On June 19, 1983, Will and his friends, Tim Williams, Matt Gibbons, Julie Nash, and Barbie Nash, arrived at the Flying W about noon. As Will had done on prior occasions, they checked the depth of the water prior to jumping or diving. They estimated that the depth at the deepest part of the hole ranged from eight to twelve feet. Before diving, Will jumped from a tree branch approximately twenty-five feet above water level into the river below. His feet did not touch the bottom. Tim Williams dove from the same tree without incident. On Will's first dive from the tree, however, his head struck the bottom and the injuries he sustained rendered him a C–5 quadriplegic. On the date of the accident, Will was a sixteen-year-old high school junior, just two weeks short of his seventeenth birthday.

Will brought suit against the United States Government (Government) under the FTCA, contending that the Government had negligently failed to warn Park users of the potential for catastrophic injury from diving at the Flying W and that the Government was negligent in failing to follow established procedures to identify and protect against potential hazards. Applying Missouri law, the district court concluded that the Government was not negligent on either ground. *Will v. United States*, 656 F.Supp. 776, 781 (E.D.Mo.1987).

## II.

Under the FTCA, the Government is liable for the injury caused by the negligent acts of its employees acting within the scope of their employment "if a private person[ ] would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C.

§ 1346(b) (1982). Under Missouri law,[3] a landowner is liable for injury to invitees [4] caused by a condition on the land if: (1) the condition involves an unreasonable risk of harm to the invitee, (2) the landowner knew or by using ordinary care could have known of this condition, (3) the landowner failed to use reasonable care to protect the invitee against the danger, and (4) as a direct result of such failure, the invitee was injured. *Cox v. J.C. Penney Co.*, 741 S.W. 2d 28, 29–30 (Mo.1987) (en banc) (applying the doctrine of pure comparative fault), *modifying Hokanson v. Joplin Rendering Co.*, 509 S.W.2d 107, 110 (Mo.1974).

At trial, Will argued that the Government was liable for his injuries because it had negligently failed to warn him of the dangers of diving at the Flying W. The district court concluded that the Government was not negligent and that it was therefore unnecessary to determine the amount of Will's comparative negligence. *Will*, 656 F.Supp. at 781. In reaching its conclusion, the court found that the natural conditions at the Flying W were open and obvious, that Will was well aware of them, and that by diving there he had assumed the risks attendant with that activity. *Id.* at 780–81.

Under the doctrine of contributory negligence, a landowner generally has no duty to warn of dangerous conditions on its land that are open and obvious. To establish a duty of care on the part of a landowner, an invitee must demonstrate that he did not know and by using ordinary care could not have known of the dangerous condition. The Missouri Supreme Court abandoned

the doctrine of contributory negligence in favor of the doctrine of pure comparative fault in *Gustafson v. Benda*, 661 S.W.2d 11 (Mo.1983) (en banc). Accordingly, it is no longer necessary for an invitee to demonstrate that he lacked actual or constructive knowledge of the dangerous condition to establish a duty of care on the part of the landowner. *Cox*, 741 S.W.2d at 30.

Will argues that by raising the issue of whether the condition was open and obvious, the district court erroneously reverted to the principles of contributory negligence. Although we agree that Will's actual or constructive knowledge of the asserted dangerous condition is irrelevant in defining the Government's duty under the doctrine of pure comparative fault, Will's actual knowledge of the dangers of diving at the Flying W is nonetheless relevant to the issue of proximate cause.

In Missouri, failure to warn may not be the proximate cause of an injury to a person with actual knowledge of the asserted dangerous condition. *Patrick v. Perfect Parts Co.*, 515 S.W.2d 554, 556 (Mo.1974) (en banc); *see Rinker v. Ford Motor Co.*, 567 S.W.2d 655, 661–62 (Mo.Ct.App.1978). In *Patrick*, a seven-year-old child who was burned while playing with denatured alcohol filed suit against the manufacturer of the alcohol on the theory that his injuries were caused by the manufacturer's failure to adequately warn of the alcohol's flammable propensities. The Missouri Supreme Court held that the manufacturer's failure to warn was not the proximate cause of the boy's injury because he had actual knowledge of the alcohol's flammability and had

---

**3.** Mo.Rev.Stat. § 537.346 (1986), states that:

Except as provided in sections 537.345 to 537.348, an owner of land owes no duty of care to any person who enters on the land without charge to keep his land safe for recreational use or to give any general or specific warning with respect to any natural or artificial condition, structure, or personal property thereon.

Because this recreational use statute did not become effective until July 28, 1983, we have not considered its effect on the Government's duty in this case.

**4.** Will argues that as a Park visitor his status was that of an invitee, rather than a licensee as determined by the district court. Under Mis-

souri law, the duty owed to a licensee or invitee is essentially the same. The distinction arises from the factual situation necessary to create the duty. A duty is owed to an invitee if the landowner knows or by the exercise of reasonable care could discover the danger, while a duty to a licensee arises only if the landowner has actual knowledge of the dangerous condition. *Claridge v. Watson Terrace Christian Church*, 457 S.W.2d 785, 786 (Mo.1970) (en banc). Because the Government's actual versus constructive knowledge of the asserted dangerous condition is not material to the resolution of this case, we have treated Will as an invitee for the purpose of this opinion.

purchased it for that reason. The boy "knew and was in possession of all the information an adequate warning could have afforded." *Patrick*, 515 S.W.2d at 556.

The district court found that Will had actual knowledge of the condition that caused his injury. Will's actual knowledge of the asserted dangerous condition distinguishes this case from those cited in Will's brief. In three of those cases, a diver was injured when his head struck a submerged rock or tree stump, the presence of which was unknown to the diver. *Compare Mandel v. United States*, 793 F.2d 964 (8th Cir.1986) (submerged rock); *Davis v. United States*, 716 F.2d 418 (7th Cir.1983) (rock protruding from lake bottom); *Stephens v. United States*, 472 F.Supp. 998 (C.D.Ill. 1979) (submerged tree stump). In the fourth case, *Schell v. Keirsey*, 674 S.W.2d 268 (Mo.Ct.App.1984), a diver was injured when her head struck the lake bottom, but she was unaware that the water was only four feet deep at that location.

Will argues that he did not know that diving at the Flying W was dangerous. Pointing to language in the district court opinion that "[a]fter being satisfied that the depth was safe for jumping and diving, the group commenced to enjoy themselves," *Will*, 656 F.Supp. at 777, Will argues that he subjectively believed that the condition was safe. Will's argument takes this finding out of context. The district court found that Will had attended a water safety course and knew that jumping or diving into water could be hazardous. *Id.* Moreover, Will admitted that he was "pretty familiar" with the swimming hole, bluff, and trees at the Flying W. He also admitted that he knew the river was deepest near the bluff and that the riverbed angled upward toward the opposite bank. Deposition at 54–55. The fact that Will proceeded to dive, "satisfied that the depth was safe for jumping and diving," does not negate the court's finding that Will was aware of

the danger. It merely means that Will, aware of the danger, was willing to "assume the risk" of diving under those conditions.

■ Generally, the question whether the failure to warn is the proximate cause of an injury is a question of fact. *Hill v. Air Shields, Inc.*, 721 S.W.2d 112, 119 (Mo.Ct. App.1986). We review such findings under the clearly erroneous standard, Fed.R.Civ. P. 52(a), under which we must accept the district court's findings unless we are left with a " 'definite and firm conviction that a mistake has been committed.' " *Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)).

■ The district court found that the Government's failure to post warning signs was not the proximate cause of Will's injury. Specifically, the court stated "that signs would not have been an effective deterrent given the fact that two of plaintiff's witnesses, close friends, have continued their diving and jumping activities at the Flying W despite Eric's accident." *Will*, 656 F.Supp. at 780. Will does not dispute this finding. The district court's determination concerning the lack of proximate cause is further supported by its finding that Will knew that diving at the Flying W was dangerous and that striking his head on the river bottom was a distinct possibility. *Id.* Accordingly, it was not clearly erroneous for the district court to find that the Government's asserted failure to warn of the dangers of diving at the Flying W was not the proximate cause of Will's injuries.[5]

Will also argues that in addition to failing to warn of the dangers of diving at the Flying W, the Government was negligent in failing to prevent diving there and in failing to remove the tree. Under Missouri law, a landowner must exercise reasonable

---

5. Will also challenges the district court's conclusions that Will's injury was caused by his activity and not by a dangerous condition, and that the published and personal warnings given by the Park were sufficient. Because we have de-

termined that any asserted failure to warn by the Government was not the proximate cause of Will's injury, it is unnecessary for us to address these issues.

care to protect invitees against danger. *Hokanson,* 509 S.W.2d at 110 (adopting Restatement (Second) of Torts § 343 (1965)). This can be accomplished by making the property reasonably safe or by warning of the actual condition and the risk involved. Restatement (Second) of Torts § 343, comment d (1965). Generally, this duty is fulfilled by giving "such warning that the visitor may decide intelligently whether or not to accept the invitation, or may protect himself against the danger if he does accept it." Restatement (Second) of Torts § 343, comment b (1965). As discussed above, Will was in possession of all the information that an adequate warning could have provided. The fact that warning signs would not have deterred Will from diving at the Flying W does not lead us to conclude that the Government had the duty to prevent diving at that location or the duty to remove the tree. The landowner's duty is one of reasonable care; it is not the absolute insurer of an invitee's safety. *Potter v. Zorensky,* 508 S.W.2d 21, 22 (Mo.Ct.App.1974).

### III.

Will argues that the Government failed to comply with two of the Park's safety policies: (1) that there was no safe place to dive in the park, and (2) that safety hazards, including hazardous trees, should be identified and steps taken to either eliminate the hazards or warn against them. Citing *Aslakson v. United States,* 790 F.2d 688 (8th Cir.1986) and *Madison v. United States,* 679 F.2d 736 (8th Cir.1982), *as amended by Harrison v. United States,* 715 F.2d 1311 (8th Cir.1983), Will contends that the Government's failure to comply with these policies is clear evidence of negligence.

Neither *Aslakson* nor *Madison* held that the Government's failure to follow established policy is clear evidence of negligence. The primary issue in both cases was whether the Government's failure to follow established policy fell within the discretionary function exception to the FTCA, 28 U.S.C. § 2680(a) (1982). *Aslakson,* 790 F.2d at 693–94; *Madison,* 679 F.2d at 741.

The discretionary function exception being inapplicable in either case, *Aslakson* and *Madison* concluded that the Government's conduct must be reviewed in accordance with applicable state tort law standards. *Aslakson,* 790 F.2d at 694; *Madison,* 679 F.2d at 741. As discussed above, we affirm the district court's judgment that the Government was not liable under Missouri law for its asserted failure to warn Will of the dangers of diving at the Flying W.

The district court's judgment is affirmed.