Carl McMICHAEL, Administrator of the Estate of Emma McMichael, Appellee,

Mrs. LaMar Bartlett, et al., Appellee,

Leonard Madison, Administrator of the Estate of Lula Mae Madison, Deceased, Appellee,

Gertie B. Mitchell, Administrator in Succession of Estate of Eliza Walker, Deceased, Appellee,

Willie Moody, Administrator of the Estate of Geraldine Moody, Deceased, Appellee,

Willie E. Kelly, Administrator of the Estate of Shirley J. Kelly, Deceased, Appellee,

Billy Harrison, Administrator of the Estate of Elsie Marie Harrison, Deceased, Appellee,

v.

UNITED STATES of America, Appellant.

No. 83–2497.

United States Court of Appeals, Eighth Circuit.

Submitted May 18, 1984.

Decided Jan. 2, 1985.

Rehearing and Rehearing En Banc Denied April 10, 1985.

Pamela L. Wood, Justice Dept., Washington, D.C., Larry R. McCord, Asst. U.S. Atty., Fort Smith, Ark., for appellant.

Bernard Whetstone and James B. McMath, Little Rock, Ark., for appellees.

Before HEANEY, BRIGHT and JOHN R. GIBSON, Circuit Judges.

HEANEY, Circuit Judge.

These consolidated cases were filed against the United States under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346, 2671–80. The Department of Defense hired an independent contractor, Celesco Industries, to produce explosive photoflash cartridges. The plaintiffs seek to recover for deaths and injuries caused by an explosion at the Celesco munitions plant near Camden, Arkansas, on March 8, 1976. The United States brings an interlocutory appeal from the district court's order denying the United States' motion to dismiss the complaints. For the reasons set forth below, we affirm.

## I. PROCEDURAL HISTORY.

This case is before us for the second time. The factual background is outlined in our first opinion, *Madison v. United States*, 679 F.2d 736, 737–38 (8th Cir.1982). The plaintiffs alleged the government was negligent in: 1) awarding a contract to produce a highly dangerous commodity to Celesco, which possessed neither the necessary skills nor proper facilities; 2) promulgating inadequate safety standards in the Department of Defense Contractor's Safety Manual; and 3) failing to enforce Celesco's compliance with the safety requirements set forth in the manual. The government successfully moved for summary judgment on the ground that the plaintiffs' claims were barred by the discretionary function exception to the FTCA. 521 F.Supp. 1273. 28 U.S.C. § 2680(a). On appeal, we affirmed the district court concerning the first two theories of liability, but held that the discretionary function exception did not bar the plaintiffs from recovery for failure to enforce compliance with the safety requirements of the contract. We noted, however, that an important issue remained to be decided: whether under Arkansas law an employer of an independent contractor has a duty to use due care to prevent the contractor from conducting inherently dangerous or ultrahazardous activities without proper precautions. We remanded to the district court to

determine this question, and if Arkansas law does recognize such a duty, to determine whether the plaintiffs can establish their claim.

On remand, the district court ruled that Arkansas law permits such a theory of recovery and denied the motion of the government to dismiss the complaints. It also ruled that its order involved a "controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the Order may materially advance the ultimate termination of the litigation." The government filed this appeal on December 19, 1983.

After the case was reargued, the United States Supreme Court decided *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines) (Varig),* — U.S. —, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984), an FTCA case in which the Court analyzed the discretionary function exception for the first time since *Dalehite v. United States,* 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953). The Court held that the discretionary function exception barred a tort action against the United States government based on the Federal Aviation Administration's (FAA) adoption and implementation of a "spot-checking" program to ensure that aircraft complied with FAA safety regulations. — U.S. at — - —, 104 S.Ct. at 2767–69, 81 L.Ed.2d at 676–79. We directed the parties to file supplemental briefs concerning the effect of the *Varig* decision on the pending appeal.

## II. ISSUES.

We must decide two issues: 1) whether the plaintiffs' remaining theory of recovery is cognizable under the FTCA in light of the discretionary function exception, and 2) if so, whether this theory is cognizable under Arkansas law.

## III. DISCRETIONARY FUNCTION EXCEPTION.

The FTCA provides that the United States is liable for any "negligent or wrongful act or omission of any employee of the government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). The United States cannot, however, be held liable for a discretionary function or duty performed by employees of the government. *Id.* § 2680(a).

We noted in our prior decision that the parties stipulated for purposes of summary judgment that

Celesco did not have the requisite skills; that the facilities in question were inadequate; and that the generally recognized procedures were not followed; that the government was aware, or could have learned of the various inadequacies mentioned through its pre-award survey, *its three on-sight [sic] assurance inspectors who were present throughout the operation,* and through periodic spot-check inspections.

* * * *that the contract with Celesco contained numerous safety regulations and requirements* which the contract required Celesco to comply with; that the requirements were inadequate in some respects, and *that they were not enforced by the Department of Defense.*

*Madison v. United States,* 679 F.2d at 738 n. 3 (emphasis added).

We analyzed the governmental conduct concerning the Celesco contract, and held that the government was not completely immune from suit under the FTCA's discretionary function exception. Our rationale was as follows:

The government may not have a legal obligation to promulgate safety rules and conduct inspections for compliance. But once it has exercised its discretion to adopt such rules and to conduct safety inspections, it is obligated in circumstances such as those allegedly present here to take reasonable steps to enforce compliance with the applicable safety regulations. * * * The failure to fulfill that obligation when the interests of safety plainly mandate it is an operational level

decision that is not immune from suit under the FTCA.

*Id.* at 741 (citations omitted).

In *Varig,* the Supreme Court held that the FAA was immune from suit. The Court determined that the FAA's decision to review aircraft design and manufacture for compliance with FAA safety regulations through a certification process—involving a spot-check of the manufacturer's work—was a discretionary function; and that the FAA employees' execution of the spot-check program was discretionary.

At our request, the parties filed supplemental briefs on the import of *Varig.* The United States argues that the decision mandates dismissal of the entire action. The plaintiffs, on the other hand, argue that *Varig* not only calls for affirming our prior decision allowing suit against the government for its failure to enforce Celesco's compliance with safety regulations, but also compels reversal of our decision that the plaintiffs were barred from suing the government for negligently letting the contract to Celesco.

■ We believe *Varig* is entirely consistent with our prior decision. The discretionary immunity exception does not bar the plaintiffs' suit against the government for failing to enforce the safety regulations in the contract. In *Varig,* the Supreme Court evaluated the government's conduct emphasizing that it is the nature and quality of the government employee's acts, not his or her status, that is important in applying the discretionary function exception. *Varig,* ── U.S. at ──, 104 S.Ct. at 2765, 81 L.Ed.2d at 674. According to the Court, Congress intended to protect "the discretionary acts of the Government acting in its role as a regulator of the conduct of private individuals. * * * Congress wished to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Id.* (Footnote omitted.).

In *Varig,* the FAA developed a system for enforcing compliance with minimum safety standards. It placed the duty of insuring compliance on the manufacturer. It only retained the responsibility for policing compliance. Thus, the manufacturer performed all inspections while the FAA reviewed the manufacturer's work by conducting spot-checks. The Supreme Court found that the decision to use this system was "plainly discretionary," explaining that "[w]hen an agency determines the extent to which it will supervise the safety procedures of private individuals, it is exercising discretionary regulatory authority of the most basic kind." *Id.* ── U.S. at ──, 104 S.Ct. at 2768, 81 L.Ed.2d at 678. The Supreme Court further held that the acts of the FAA employees in conducting spot-checks were also protected as discretionary activity. It reasoned that the FAA was "specifically empowered to make policy judgments regarding the degree of confidence that might reasonably be placed in a given manufacturer, the need to maximize compliance with the FAA regulations, and the efficient allocation of agency resources." *Id.*

There are several important differences between *Varig* and this case. Initially, we note that in *Varig,* the FAA acted solely in a regulatory capacity. In this case, the Defense Department was pursuing a proprietary rather than a regulatory objective, by contracting with Celesco to manufacture photo-flash cartridges for sale to West Germany. The Supreme Court's admonition to avoid judicial second-guessing of regulatory decisions is thus not wholly applicable to the Defense Department's supervision of the Celesco contract.

*Varig* is further distinguished by the nature and quality of the conduct of Defense Department employees here. In *Varig,* the FAA made a policy decision to place primary responsibility for safety compliance with the airplane manufacturer, and to have the manufacturer perform the inspections subject only to FAA spot-checks. The FAA had broad discretion to determine the number and frequency of the spot-checks. The FAA inspectors were not obligated to inspect each plane. Indeed, the Supreme Court noted that there was no

evidence in the record that they had actually inspected the parts of the planes at issue. —— U.S. at ——, 104 S.Ct. at 2766, 81 L.Ed.2d at 675.

By contrast, in this case the Defense Department had three quality assurance inspectors constantly on site at the Celesco plant. While these inspectors had primary responsibility for quality control, they also had important responsibility for assuring safety. The Armed Services Procurement Regulations and the Celesco contract gave the government the authority to cease performance on the contract if safety violations were discovered.[1] Their job description included assuring that "all supplies and services accepted for the government meet all contractual requirements." These contractual requirements included the Department of Defense Contractor's Safety Manual for Ammunition, Explosives and Related Dangerous Material. Section 103(b) of this Manual provides that the Administrative Contracting Officer (ACO) is responsible for "[a]ssuring that the contract contains safety clauses and technical safety data and that the contractor complies with same; [and] reporting noncompliance to the PCO (Procuring Contract Officer)." The quality assurance inspectors also reported to a Safety Manager with the

Defense Contract Administrative Services Region in Dallas, Texas. The inspectors' regular procedures included a fifty-one step procedures review checklist for safety compliance. Thus, the Defense Department inspectors were not called upon to make discretionary regulatory judgments. Rather, they had a number of precise inspections to perform which involved no judgment concerning agency policy. For purposes of summary judgment, the parties have stipulated that the inspectors failed to enforce numerous safety requirements. In light of these distinctions from *Varig*, we reaffirm our prior holding that the government's conduct in failing to enforce the detected violations of the safety requirements is not protected as a discretionary function.

■ We also affirm our prior conclusion that the government's decision to award the contract to Celesco is an immune discretionary function. The emphasis in *Varig* on the nature of the act, rather than the status of the actor, does not alter this determination. Deciding to award a government defense contract to a particular manufacturer involves weighing various facts and policies and thus is discretionary in nature. *See Madison v. United States,* 679 F.2d at 739.

---

1. Armed Services Procurement Regulation § 7–104.79 provides that a safety clause be inserted in every contract for ammunition and explosives which includes the following provisions:

(b) The Contractor shall comply with the DoD Contractor's Safety Manual for Ammunition, Explosives and Related Dangerous Materials (DoD Manual 4145.26M), in effect on the date of the solicitation for this contract, as it relates to ammunition and explosives, and any other additional or more stringent requirements included in the schedule of this contract. *If the Contracting Officer notifies the Contractor of any noncompliance with such Manual, or schedule provisions, the Contractor shall immediately take corrective action. If the Contractor fails or refuses to take corrective action within the time specified by the Contracting Officer, the Contracting Officer may direct the Contractor to cease performance on all or part of this contract, or until satisfactory corrective action has been taken.* Any notification or direction under this paragraph should be in writing or confirmed in writing by the Contracting Officer.

*The Contracting Officer may at any time remove Government personnel whenever the Contractor is in noncompliance with the safety requirements of this clause.* \* \* \*

\*   \*   \*   \*   \*   \*

(d) Neither the requirements of this clause nor any act or failure to act by the Government in surveillance or enforcement thereof shall affect or relieve the Contractor of responsibility for the safety of his personnel and his property and for the safety of the general public in connection with the performance of this contract, or impose or add to any liability of the Government for such safety. The Contractor is not entitled to rely on the requirements of this clause or on any Government surveillance or enforcement thereof, or lack thereof, or granting of any waiver or exemption in accordance with DoD 4145.26M in discharging the Contractor's responsibility.
32 C.F.R., Subchapter A, Defense Acquisition Regulations Section VII, Armed Services Procurement Regulation § 7–104.79 (1984) (emphasis added).

## IV. ACTIONABILITY UNDER ARKANSAS LAW.

Under 28 U.S.C. § 1346(b), the United States is liable for the negligence of government employees acting within the scope of their duties "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

█ The district court held that under Arkansas law, an employer of an independent contractor has a duty to use due care to prevent the contractor from conducting inherently dangerous or ultrahazardous activities without proper precautions. There is little direct Arkansas authority on this question, and so we accord substantial deference to the district court's interpretation of state law. *See Kansas State Bank v. Citizens Bank*, 737 F.2d 1490, 1496 (8th Cir.1984); *Pyle v. Dow Chemical Co.*, 728 F.2d 1129, 1130–31 (8th Cir.1984).

A close analysis indicates that there are several currents in Arkansas law which support the district court's view. There is the general principle in Arkansas cases that one who hires an independent contractor is nevertheless liable for his or her own negligence, especially where one undertakes to perform certain duties or activities in relation to the work and performs them negligently. *Gordon v. Matson*, 246 Ark. 533, 439 S.W.2d 627, 629 (1969); *Hopson v. United States*, 136 F.Supp. 804, 810–11 (W.D.Ark.1956).[2]

█ There is also the clearly established rule in Arkansas law that an owner of property who has hired an independent contractor to work on its property has a duty to the independent contractor's employees to exercise ordinary care, and to warn in the event of any unusually hazardous conditions which might affect their welfare. *Gordon v. Matson*, 439 S.W.2d at 629; *Aluminum Ore Co. v. George*, 208 Ark. 419, 186 S.W.2d 656, 658 (1945). This is essentially the "business invitee" concept—when you invite someone onto your property to perform work, you have a duty to exercise ordinary care for their welfare. This duty does not include, however, a duty to warn employees of independent contractors of obvious dangers which are inherent in the work to be performed. *Jackson v. Petit Jean Electric Co-op*, 270 Ark. 506, 606 S.W.2d 66, 68 (1980); *Davis v. Lingl Corp.*, 277 Ark. 303, 641 S.W.2d 27, 29 (1982). This business invitee rule has been extended to cover the duties of a prime contractor—on the theory that the general or prime contractor invites the subcontractor onto a job site and therefore assumes a degree of responsibility for the subcontractor's employees' welfare. *Gordon v. Matson*, 439 S.W.2d at 629.

█ The business invitee rule does not apply directly to the instant case, where the government has hired an independent contractor to perform work on the contractor's own premises. Nevertheless, the underlying basis for liability to a business invitee, control over the job site, is also at work in a related principle set forth in section 414 of the Second Restatement of Torts:

### § 414. Negligence in Exercising Control Retained by Employer.

One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is

---

**2.** In *Hopson,* an employee of an independent contractor performing work for the Navy tried to recover under the FTCA for injuries from a fire or explosion. The court stated that the government would be liable for its Navy inspector's own negligence in installing, operating, or inspecting the machines at the munitions plant which caused the explosion. But the court found insufficient evidence of negligence. The Navy inspector had knowledge of the defect in the machine causing the explosion, but his failure to require the machine to be shut down was not negligent—he had no authority over plant personnel, and he had insufficient time between his inspection and the fire to allow pursuing the matter through Navy channels. *Hopson v. United States,* 136 F.Supp. at 810–11.

caused by his failure to exercise his control with reasonable care.

Comment c to section 414 states:

> In order for the rule stated in this Section to apply, the employer must have retained at least some degree of control over the manner in which the work is done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way.

Restatement (Second) of Torts § 414, comment c (1965).

The Arkansas courts follow this rule, finding liability where the employer of an independent contractor retains control of the work. *See Aluminum Ore Co. v. George*, 186 S.W.2d at 658. In one Arkansas case, *Erhart v. Hummonds*, 232 Ark. 133, 334 S.W.2d 869 (Ark.1960), several architects were held liable for negligently inspecting and supervising some excavation work. The architects were employed to supervise construction, they had authority to stop the work when necessary, and the work involved an inherent danger known to them. *Id.* 334 S.W.2d at 872.

The government cites *Jackson v. Petit Jean Electric Co-op*, 268 Ark. 1076, 599 S.W.2d 402 (Ark.App.1980), *aff'd*, 270 Ark. 506, 606 S.W.2d 66 (1980), as support for its position that Arkansas law does not recognize plaintiffs' theory of liability. The district court cited *Jackson* in support of the plaintiffs' theory. Our careful reading of *Jackson* concurs with that of the district

court. In *Jackson*, Petit Jean Electric Co-op had hired Jackson's employer, Johnson Construction (an independent contractor), to rebuild lines in its electric transmission system. Jackson was injured when he came into contact with an energized power line. He recovered under the state workers' compensation act, but also sued Petit Jean.

Jackson argued that Petit Jean was negligent in breaching a duty of care for the employees of the independent contractor which it affirmatively assumed under the construction contract.[3] Jackson lost on summary judgment. The case went up to the Arkansas Supreme Court, which affirmed. The court began its analysis with the premise that "[i]t is generally recognized that an employer of an independent contractor owes a common law duty to the contractor's employees to exercise ordinary care for their safety and to warn against any hidden dangers or unusually hazardous conditions." *Id.* 606 S.W.2d at 68. The court held that Petit Jean had no duty to de-energize or isolate its power lines, or to warn the employees of the independent contractor that the work was dangerous if not done properly, because the contract expressly called for working on energized lines, and thus the hazard was obvious and integral to the contract work. *Id.* 606 S.W.2d at 68. Moreover, the court noted that Petit Jean had no supervision or control over the manner and details of the work. *Id.* 606 S.W.2d at 68–9.

Very few cases concerning the liability of private employers of an independent contractor involve the level of control which the government had here. The distinctive factors in our application of Arkansas law to the instant case are: 1) the hiring of an independent contractor to perform ultrahazardous work; 2) promulgation of detailed safety requirements and incorporation of them into the contract; 3) express reservation of continuous inspection au-

---

**3.** Jackson also argued that even if Petit Jean was not itself negligent, it was vicariously liable for the independent contractor's negligence because the work was inherently dangerous. The court refused to impute such liability. *Jackson v. Petit Jean Electric Co-op*, 270 Ark. 506, 606 S.W.2d 66, 68–9 (1980).

thority to ensure compliance with these requirements; 4) the continuous presence of three government inspectors on the job for the explicit purpose of insuring compliance with safety and quality requirements; and 5) the failure to perform the required inspections or to take action when violations were observed.

Finally, we observe that there are other FTCA cases which bear on this issue directly that hold that one who hires an independent contractor to do extra-dangerous or ultrahazardous work has a duty to exercise reasonable care to see that the contractor takes proper precautions to protect those who might sustain injury from the work. This liability may be imposed on the United States as an employer, and it is not vicarious or strict liability, but rather a function of the employer's own negligence. *See, e.g., United States v. Barron*, 473 F.Supp. 1077, 1082–83 (D.Haw.1979), *aff'd*, 654 F.2d 644 (9th Cir.1981); *McGarry v. United States*, 549 F.2d 587 (9th Cir.1976), *cert. denied*, 434 U.S. 922, 98 S.Ct. 398, 54 L.Ed.2d 279 (1977); *Thorne v. United States*, 479 F.2d 804, 807–10 (9th Cir.1973); *Emelwon, Inc. v. United States*, 391 F.2d 9, 11–12 (5th Cir.), *cert. denied*, 393 U.S. 841, 89 S.Ct. 119, 21 L.Ed.2d 111 (1968).

We affirm the district court's ruling that the plaintiffs should have the opportunity to prove that the Defense Department failed to exercise reasonable care to see that Celesco took proper safety precautions. In this connection, they must prove that the Defense Department employees were in fact negligent in this regard, and that their negligence was a proximate cause of the injuries to the plaintiffs. We therefore remand this case to the district court for trial with the issues of liability defined as set forth in this opinion.