**Charles WAYMIRE and Dammire Marketing, Inc., Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

Civ. A. No. 84–2428.

United States District Court, D. Kansas.

Jan. 14, 1986.

Jerry K. Levy, Rene M. Netherton, Topeka, Kan., for plaintiffs.

Benjamin L. Burgess, U.S. Atty., Janice Miller Karlin, Asst. U.S. Atty., Kansas City, Kan., Roy Krieger, Civ. Div., Torts Branch, Dept. of Justice, Toby Camen, F.A.A., AGC–400, Washington, D.C., for defendant.

## MEMORANDUM AND ORDER

EARL E. O'CONNOR, Chief Judge.

This matter is before the court on defendant's motion to dismiss this action pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiffs have filed this suit under the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.*, alleging that the defendant, its agents or employees negligently performed an inspection and certificated plaintiffs' aircraft as airworthy. The defendant seeks dismissal of the case based on the discretionary function exception to the Federal Tort Claims Act.

▇▇▇ The discretionary function exception is jurisdictional in the sense that a district court may not entertain claims that fall within the provisions of the exception. *See Monaco v. United States*, 661 F.2d 129, 131 (9th Cir.1981), *cert. denied*, 456 U.S. 989, 102 S.Ct. 2269, 73 L.Ed.2d 1284 (1982). We shall therefore treat defendant's motion as one to dismiss for lack of subject matter jurisdiction. When the government raises the applicability of such an exception, the ultimate burden of proving its inapplicability, as in all matters jurisdictional, falls upon the plaintiff. 13 Wright and Miller, *Federal Practice and Procedure* § 3522 at p. 62–64.

### I. *Facts.*

The facts pertinent to this motion are as follows. On March 28, 1983, an Aviation Safety Inspector employed by the Federal Aviation Agency (hereinafter FAA) performed a physical inspection of a Cessna 320E aircraft.[1] The FAA inspection was performed pursuant to 14 C.F.R. § 21.183 for issuance of a standard airworthiness certificate. Prior to the aircraft's inspection, a Radome unit had been added to the aircraft. Plaintiffs claim that when the Radome unit was added the pitot tubes on the aircraft were moved, that only one of the required tubes was reinstalled, and that the tube reinstalled was installed upside down. On June 6, 1983, the aircraft crashed while being piloted by the plaintiff Waymire. Plaintiffs contend that the cause of the aircraft's crash was the erroneous air speed indications plaintiff received as a result of the improper installation of the pitot tubes.

---

**1.** At the time of the inspection, the plane was owned by Dodson Aviation of Ottawa, Kansas. Plaintiffs later purchased the plane and owned it at the time of the crash.

Plaintiffs allege negligence on the part of the FAA Aviation Inspector who certificated plaintiffs' aircraft as airworthy. They contend that the inspector was negligent in failing to notice that plaintiffs' aircraft had undergone a major alteration by the installation of the Radome. Furthermore, plaintiffs allege that the inspector was negligent in failing to discover that only one pitot tube was reinstalled and that the tube was reinstalled incorrectly. Finally, plaintiffs claim that the inspector was negligent in certificating the plane as airworthy, when in fact it was not.

## II. Background.

Pursuant to the Federal Aviation Act of 1958, 49 U.S.C. § 1421(a)(1), the Secretary of Transportation has the duty to promote the safety of flight of civil aircraft by establishing minimum standards for aircraft design, materials, workmanship, construction and performance. The Secretary has the discretion to prescribe reasonable rules and regulations governing the inspection of aircraft, including the manner in which such inspections should be made. 49 U.S.C. § 1421(a)(3).

Before an aircraft may be placed into service, its owner must obtain from the FAA an airworthiness certificate, which denotes that the aircraft is in a safe condition for operation. Section 1423(c) of Title 49 provides in part:

The registered owner of any aircraft may file with the Secretary of Transportation an application for an airworthiness certificate for such aircraft. If the Secretary of Transportation finds ... that after inspection, that the aircraft is in condition for safe operation, he shall issue an airworthiness certificate. The Secretary of Transportation may prescribe in such certificate the duration of such certificate, the type of service for which the aircraft may be used, and such other terms, conditions, and limitations as are required in the interests of safety.

The Federal Tort Claims Act, 28 U.S.C. § 1346(b) (hereinafter FTCA), authorizes suits against the United States for damages for:

injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

The discretionary function exception of the Federal Tort Claims Act states that the jurisdictional grant of 28 U.S.C. § 1346(b) shall not apply to:

[a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a).

In deciding whether the discretionary function exception to the FTCA applies in this case, we must determine whether the FAA and its employee who inspected the aircraft were performing a discretionary function. The United States Supreme Court recently considered the scope of the discretionary function exception in *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984). In that case the Supreme Court unanimously held that the discretionary function exception immunized the FAA from tort liability for its alleged negligence in issuing type and supplemental type certificates signifying that the basic or altered design in aircraft meets the minimum criteria specified in the safety regulations.

The *Varig* case consisted of two consolidated actions. In the first case, *Varig Airlines*, the representatives of passengers killed in a fire aboard a Boeing 707 jet sued

the FAA, claiming that the agency was negligent when it inspected the jet and issued a type certificate certificating that the basic design of the jet met the minimum criteria for safety under FAA regulations, when in fact it did not comply with fire protection standards. In the second case, *United Scottish Insurance Co.*, plaintiffs sued the FAA when an aircraft caught fire in midair and crashed due to the improper installation of a gasoline fuel heater. Plaintiffs claimed that the FAA negligently issued a supplemental type certificate approving the installation of the heater, when in fact, the installation did not comply with the applicable FAA regulations. After a thorough review of FAA certification processes, the Court held that the discretionary function exception immunized the FAA type and supplemental type certification processes from tort liability.

■ The Court found that it was unnecessary and, indeed impossible, to define with any precision the discretionary function exception. 104 S.Ct. at 2765. The Court did note, however, that two factors are useful in determining when the acts of a government employee are protected from liability. First, "it is the nature of the conduct, rather than the status of the actor, that governs whether the discretionary function exception applies in a given case." *Id.* Accordingly, the basic inquiry is whether the challenged acts of a government employee, whatever his position or rank, "are of the nature and quality that Congress intended to shield from tort liability." *Id.* Second, the discretionary function exception "plainly was intended to encompass the discretionary acts of the Government acting in its role as a regulator of the conduct of private individuals." *Id.* The Court noted that "[b]y fashioning an exception for discretionary governmental functions, including regulatory activities, Congress took 'steps to protect the Government from liability that would seriously handicap the efficient government operations.'" *Id.*, (quoting *United States v. Muniz*, 374 U.S. 150, 163, 83 S.Ct. 1850, 1858, 10 L.Ed.2d 805, 815 (1963)).

### III. *Application of* Varig Airlines *to this Action.*

Defendant contends that *Varig Airlines* applies in this case and compels the conclusion that the discretionary function exception bars claims of negligent inspection and certification for airworthiness. Furthermore, defendant contends that the inspector's failure to discover the alleged defects is not actionable because the scope of such an inspection is a discretionary function. Plaintiffs, on the other hand, contend that *Varig* is not applicable to this case. Plaintiffs assert that *Varig* is distinguishable from this case, because in *Varig* the plaintiffs challenged the type and supplemental type certification process and *not* the airworthiness certification process. Plaintiffs claim that an FAA inspector must follow certain regulations in inspecting for airworthiness. When mandatory guidelines or regulations are violated by a government employee, such actions do not fall within the discretionary function exception. Furthermore, plaintiffs contend that the exception does not apply when the plaintiff has made specific allegations of negligence on the part of the government's employee, as plaintiff has done in this case.

### A.

■ Plaintiffs seek to distinguish between the instant action and *Varig Airlines* on the ground that the Supreme Court's holding in *Varig* applies only to the issuance of type and supplemental type certificates and not to airworthiness certificates. We find plaintiffs' argument to be without merit. This case involves the same statutory scheme as in *Varig Airlines.* Pursuant to 49 U.S.C. § 1423 the Secretary of Transportation is empowered to issue type certificates and airworthiness certificates. A type certificate is required before a manufacturer may introduce a new type of aircraft. The type certificate signifies that the basic design of the aircraft meets the minimum criteria specified in the FAA's safety regulations found at 14 C.F.R. §§ 21.11–21.53. To apply for a type

certificate, the manufacturer must supply the FAA with detailed plans, documentation and data demonstrating that it has complied with FAA regulations. *Varig Airlines*, 104 S.Ct. at 2761. FAA employees then review the information submitted by the applicant and make such inspections or tests as they deem necessary to determine compliance with the regulations. *Id. See also* 14 C.F.R. § 21.33(a). If the FAA finds that the aircraft design meets minimum safety standards, it issues the type certificate. *Varig Airlines*, 104 S.Ct. at 2761. *See also* 49 U.S.C. § 1423(a)(2); 14 C.F.R. § 21.21(a)(1).

An additional certificate is required if an aircraft is altered by the introduction of a major change in its type design. *Varig Airlines*, 104 S.Ct. at 2761. *See also* 14 C.F.R. § 21.113. To obtain this supplemental type certificate, the applicant must demonstrate to the FAA that the altered aircraft meets all applicable airworthiness requirements. The applicant is responsible for conducting the inspections and tests necessary to show that the alterations in the design type comply with the regulations. The methods used by the FAA employees to determine compliance with the safety standards are generally the same for supplemental type certificates as for basic type certificates. *Varig Airlines*, 104 S.Ct. at 2761–62.

Before any new or altered aircraft may be placed into service, however, its owner must obtain an airworthiness certificate from the FAA. This certificate denotes that the particular aircraft in question conforms to the type certificate and is in a condition for safe operation. *Id.* at 2761. *See also* 49 U.S.C. § 1423(c).

The Supreme Court in *Varig Airlines* held that the FAA's certification process is founded upon the following grounds:

> The duty to insure that an aircraft conforms to FAA safety regulations lies with the manufacturer and operator, while the FAA retains the responsibility for policing compliance. Thus, the manufacturer is required to develop the plans and specifications and perform the inspections and tests necessary to establish that an aircraft design comports with the applicable regulations; the FAA then reviews the data for conformity purposes by conducting a "spot check" of the manufacturer's work.

104 S.Ct. at 2766–67. The Court went on to hold that the FAA's decision to implement the spot check system of compliance review was plainly discretionary activity protected by the discretionary function exception. It also held that the acts of FAA employees in executing the spot check program were protected by the discretionary function exception as well. Thus, the FAA's alleged negligence in failing to check certain specific items in the course of certificating a particular aircraft fell squarely within the discretionary function exception. *Id.* at 2768–69.

Plaintiffs argue that the certification procedure for airworthiness involves more than mere spot checking to see if the craft complies with regulations. According to 14 C.F.R. § 21.183, the FAA must inspect the aircraft to see if it conforms to safety regulations. Thus, according to plaintiffs, that inspection is not a discretionary function.

We must disagree with plaintiffs' argument. After carefully reviewing the provisions regulating the various certification procedures, we find that there is no basis to distinguish between the FAA's role when issuing type certificates and airworthiness certificates. The applicant for an airworthiness certificate has the duty to insure that his aircraft conforms to the FAA safety regulations. This duty is similar to the one imposed upon the manufacturer and operator when applying for type or supplemental type certification. The federal regulation governing applications for airworthy certificates provides:

> An applicant for a standard airworthiness certificate for aircraft not covered by paragraphs (a) through (c) of this section is entitled to a standard airworthiness certificate if—
>
> (1) *He presents evidence to the Administrator that the aircraft conforms*

*to a type design* approved under a type certificate or a supplemental type certificate and to applicable Airworthiness Directives;

(2) *The aircraft* (except an experimentally certificated aircraft that previously had been issued a different airworthiness certificate under this section) *has been inspected in accordance with the performance rules for 100-hour inspections set forth in 43.15 of this chapter and found airworthy by*

(i) *The manufacturer;*

(ii) *The holder of a repair station certificate* as provided in Part 145 of this chapter;

(iii) *The holder of a mechanic certificate* as authorized in Part 65 of this chapter; or

(iv) *The holder of a certificate issued under Part 121 or 127 of this chapter,* and having a maintenance and inspection organization appropriate to the aircraft type; and

(3) The Administrator finds after inspection, that the aircraft conforms to the type design, and is in condition for safe operation.

14 C.F.R. § 21.183(d) (emphasis added).

We see no basis for distinguishing the responsibilities of the FAA in inspecting the aircraft for an airworthiness certificate pursuant to the above regulation and the FAA's responsibility in inspecting an aircraft for a type certificate. The regulation governing issuance of type certificates provides in pertinent part:

An applicant is entitled to a type certificate for an aircraft ... if—

. . . .

(b) The applicant submits the type design, test reports, and computations necessary to show that the product to be certificated meets the applicable airworthiness and aircraft noise requirements of the Federal Aviation Regulations and any special conditions prescribed by the Administrator, and the Administrator finds—

(1) Upon examination of the type design, and after completing all tests and inspections, that the type design and the product meet the applicable aircraft noise requirements of the Federal Aviation Regulations, and further finds that they meet the applicable airworthiness requirements of the Federal Aviation Regulations....

14 C.F.R. § 21.21.

After comparing the above two regulations, we find that the FAA's duty in issuing an airworthiness certificate extends only to policing compliance with the safety regulations. As the Supreme Court noted in *Varig Airlines*, "when an agency determines the extent to which it will supervise the safety procedures of private individuals, it is exercising discretionary regulatory authority of the most basic kind." 104 S.Ct. at 2768. The FAA "has a statutory duty to *promote* safety in air transportation, not to insure it." *Id.* at 2769 (emphasis in original). We must therefore conclude that the Supreme Court's holding in *Varig Airlines* is applicable to this case and bars plaintiffs' suit against the United States.

B.

Plaintiffs further argue that *Varig Airlines* is not applicable to this case because when certificating an aircraft as airworthy, the FAA inspector has mandatory guidelines to follow in making his airworthiness inspection. FAA Order 8130.26, subsection 34(j), Plaintiffs' Exhibit A, provides that the FAA inspector is to:

j. Inspect the aircraft, pertinent data, and records as necessary to determine that:

(1) All required items of equipment are installed.

(2) Instruments, instrument markings, data plate and placards are as required.

(3) All items of equipment, both required and optional, are properly listed and the equipment list and the aircraft agree.

(4) All aircraft systems have been satisfactorily checked for proper operation. Also, determine that the opera-

tion of the engine(s) and propeller(s) have been checked in accordance with the aircraft manufacturer's instructions.

(5) All relevant ADs have been complied with.

(6) The aircraft conforms to the approved type certificate data and is in a condition for safe operation.

Plaintiffs argue that the inspector had no discretion to disregard this order, and thus his inspection was not a discretionary function. Plaintiffs rely on *McMichael v. United States*, 751 F.2d 303 (8th Cir.1985), to support their argument. In *McMichael* the Eighth Circuit held that when a government employee has "a number of precise inspections to perform, which involve no judgment concerning agency policy," the employee's failure to detect violations of the safety requirements is not protected as a discretionary function. *Id.* at 307.

We find that *McMichael* is inapplicable to the case at bar and is distinguishable from the facts in *Varig Airlines*. In *McMichael*, the United States contracted with a company to manufacture explosives. Government inspectors had a fifty-one step procedure to check for safety violations and three government quality assurance inspectors were constantly on site. The court in *McMichael* held that the government was not performing a discretionary function when it made its inspections. *Id.* The court noted, however, that there were two important differences between *Varig* and *McMichael*. First, the FAA in *Varig* was acting solely in a regulatory capacity, and not in a proprietary function by contracting with a manufacturing company as in *McMichael*. Second, in *Varig*, the FAA made a policy decision to place the primary responsibility for safety compliance with the airplane manufacturer and not the owner, whereas in *McMichael* the government had assumed the major responsibility for assuring safety. *Id.* at 306–307.

These distinctions apply equally as well to the instant case. The FAA's inspections for airworthiness clearly arise out of its regulatory conduct. *Varig Airlines* made

it plain that the discretionary function exception encompasses the acts of the government in its role as a regulator of private conduct. 104 S.Ct. at 2765. *Accord Dalehite v. United States*, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953). Secondly, as discussed above, the FAA has made a policy decision that the owner or manufacturer has the primary responsibility for inspecting the plane and for complying with FAA regulations.

As the Third Circuit noted in *General Public Utilities Corp. v. United States*, 745 F.2d 239, 245 (3d Cir.1984):

The exemption from the Tort Claims Act is based on the nature of the governmental discretionary function, not whether there is an option to choose. Regulatory activities are within the exemption, not because alternatives exist in particular circumstances, but because of the fundamental character of the role assigned to the agency.

The Secretary of Transportation was given the duty to promote air safety by promulgating reasonable rules and regulations governing the inspection and servicing of civil aircraft. 49 U.S.C. § 1421(a)(3)(A). In her discretion, the Secretary may also prescribe "the manner in which such inspection, servicing and overhaul shall be made." *Id.* at § 1421(a)(3)(C). Thus, Congress empowered the Secretary to implement a system for enforcing compliance with minimum safety standards according to the Secretary's best judgment. *Varig Airlines*, 104 S.Ct. at 2766.

■ In the exercise of this discretion, the Secretary implemented 14 C.F.R. § 21.-183, placing most of the burden on the applicant to show that the aircraft is airworthy. As defendant points out, the inspection in this case was in no way required by the addition of the Radome unit; rather, plaintiffs were required to have their plane certificated on the basis that it had recently returned from out of the country. The repair station that installed the new unit was responsible for having the unit inspected and was required to certify on the plane's maintenance or alteration

record that the plane was airworthy with respect to the work performed. *See* 14 C.F.R. § 145.59.

The FAA inspector in this case was therefore required only to inspect the plane's records and the aircraft itself "as necessary" to see if all aircraft systems were "satisfactorily checked" and that the airplane was in a "condition for safe operation." *See* FAA Order, *supra.* We find that this clothed the FAA inspector with sufficient discretion to make the discretionary function exception applicable to this case.

C.

Finally, plaintiffs seek to distinguish this action from *Varig Airlines* on the ground that the plaintiffs in *Varig* did not allege specific acts of negligence on the part of FAA employees in the actual inspection of the defective planes. It is true, as plaintiffs point out, that in *Varig* there was no indication that the planes were actually inspected or reviewed by an FAA inspector or representative. Plaintiffs in this case argue that since they do not allege a failure to inspect as did plaintiffs in *Varig,* but rather a negligently performed inspection, the holding in *Varig* does not preclude this action. We must disagree.

This same argument was addressed and rejected in *Proctor v. United States,* 622 F.Supp. 10 (C.D.Cal.1984). We agree with the *Proctor* court, which stated:

> [I]t is clear that the [*Varig*] Court adopted the much broader position urged by the government; that is, that the entire FAA certification *process* is immune from potential tort liability. Thus, the Court agreed with the government that "the discretionary function exception precludes a tort action based upon the *conduct of the FAA in certificating these aircraft* for use in commercial aviation."

*Id.,* at 12 (emphasis in original) (quoting *Varig Airlines,* 104 S.Ct. at 2768). To hold otherwise would have the anomalous effect of the FAA being immune from liability under *Varig Airlines* if it certificated an aircraft without inspection, but subject to liability for certificating an aircraft that it

did inspect. This would encourage the FAA to inspect as few aircraft as possible and would, of course, run counter to the FAA's statutory duty to promote safety in air transportation. *Id.,* at 12–13.

In light of the foregoing, we hold that this action against the FAA for its alleged negligence in certificating plaintiffs' aircraft as airworthy is barred by the discretionary function exception of the Federal Tort Claims Act.

IT IS THEREFORE ORDERED that defendant's motion to dismiss for lack of subject matter jurisdiction is granted.