# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-3147
_____

Compart's Boar Store, Inc.

*Plaintiff - Appellant*

v.

United States of America

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: June 14, 2016
Filed: July 13, 2016

_____

Before MURPHY and SHEPHERD, Circuit Judges, and PERRY,[1] District Judge.

_____

MURPHY, Circuit Judge.

In 2011 Compart's Boar Store (Compart), a producer of breeding swine, intended to export over three hundred pigs to China. China suspended all imports from Compart, however, after it was notified by the United States government that

_____

[1]The Honorable Catherine D. Perry, United States District Judge for the Eastern District of Missouri, sitting by designation.

the test results from a small set of the blood samples were "inconclusive" for Porcine Reproductive and Respiratory Syndrome virus (PRRSv). Compart subsequently brought a negligence suit against the United States under the Federal Tort Claims Act (FTCA). The district court[2] dismissed Compart's action for lack of jurisdiction after concluding that it fell within the FTCA's discretionary function exemption. Compart appeals and we affirm.

I.

The export of pigs to China is governed by the Quarantine and Health Requirements of the People's Republic of China for Swine Exported from the United States (China Protocol). Under the China Protocol the National Veterinary Services Laboratories (NVSL) must test pigs prior to their export to China for PRRSv, a viral disease which can cause pigs to have spontaneous abortions, pneumonia, lethargy, and lack of appetite. NVSL is overseen by the Animal and Plant Health Inspection Service which is an agency of the USDA.

NVSL tests pigs for PRRSv using two immonufluorescent antibody (IFA) tests and a virus isolation test. If the pigs pass the first IFA test they are isolated in a quarantine facility for 30 days and tested again using another IFA test. Ten percent of the quarantined pigs are also tested for PRRSv using a virus isolation test. NVSL's procedure for virus isolation tests is set out in a document entitled Isolation of Porcine Reproductive and Respiratory Syndrome Virus (PRRSV) from Porcine Specimens (hereinafter VISOP).

This VISOP requires testing blood samples on two cell lines, known as SAM and MARC cells. The cultures are then examined for cell damage over approximately

_____

[2]The Honorable Patrick J. Schiltz, United States District Judge for the District of Minnesota.

-2-

seven days. If no cell damage is observed, the cultures are frozen and thawed and the process is repeated. If no cell damage is observed for a second time, the cultures are stained and examined for fluorescence. The presence of fluorescence ordinarily indicates the presence of PRRSv. The VISOP provides the following guidance for interpreting the stained cultures:

> If fluorescence is observed in any cultures inoculated with submitted specimens, and is comparable to fluorescence observed in the positive slides, and no fluorescence is observed in the negative controls, the specimen is reported as positive for PRRS virus isolation. If no fluorescence is observed in any but the positive control slides, the specimens are considered negative for PRRS virus isolation.

The VISOP provides no guidance, however, on what action to take when the cultures do not appear positive or negative.

In 2011 Ag World International Corporation secured a contract to export pigs to China. After Chinese buyers selected over three hundred of Compart's pigs to be included in the shipment, the pigs underwent PRRSv testing. During the first IFA test, all of Compart's pigs tested negative for PRRSv. They were then placed in a quarantine facility where they passed a second IFA test. During the virus isolation test, NVSL did not observe any cell damage in either the MARC or SAM cells. Nevertheless, a NVSL lab technician observed fluorescence in some of the stained MARC cells. The fluorescence was unusual because it was not as bright as typical positive slides and not as dark as typical negative slides. NVSL personnel then conducted additional testing that yielded similar results. NVSL then issued a final report stating that all PRRSv tests were negative with the exception of a few samples whose results were "inconclusive." China subsequently suspended all swine imports from Compart.

Compart filed suit against the United States, alleging that NVSL was negligent in testing its pigs for PRRSv and in reporting the results to China. The district court

granted the government's motion to dismiss for lack of jurisdiction under Rule 12(b)(1). The court concluded that the discretionary function exemption to the Federal Tort Claims Act (FTCA) barred Compart's claims. Compart appeals.

## II.

We review de novo motions to dismiss for lack of jurisdiction under Rule 12(b)(1). Herden v. United States, 726 F.3d 1042, 1046 (8th Cir. 2013). The plaintiff has the burden of proving subject matter jurisdiction. Id. To determine our court's jurisdiction, we may look outside the pleadings. Id. We review for clear error the district court's "determination of disputed factual issues." Osborn v. United States, 918 F.2d 724, 730 (8th Cir. 1990).

Sovereign immunity shields the United States and its agencies from suit absent a waiver. FDIC v. Meyer, 510 U.S. 471, 475 (1994). Under the FTCA the United States has consented to be sued in tort "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. The FTCA contains numerous exceptions to this waiver of sovereign immunity, however. E.g., id. § 2680. If an exception applies, "the bar of sovereign immunity remains." Dolan v. U.S. Postal Serv., 546 U.S. 481, 485 (2006).

One exception is the discretionary function exemption, which deprives courts of jurisdiction over any claim "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). The purpose of the exception is to "prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." United States v. Gaubert, 499 U.S. 315, 323 (1991) (internal quotations omitted).

The discretionary function exemption applies if two requirements are met. See Gaubert, 499 U.S. at 322–23 (1991). First, we must consider whether the suit concerns "acts that are discretionary in nature, [that is] acts that involve an element of judgment or choice." Id. at 322 (internal quotations omitted). Government employees act with discretion unless they are following a regulation or policy that is "mandatory and . . . clearly and specifically define[s] what the employees are supposed to do." C.R.S. ex rel. D.B.S. v. United States, 11 F.3d 791, 799 (8th Cir. 1993). Second, we must determine whether the government acted or based its decision "on considerations of public policy." Gaubert, 499 U.S. at 323 (internal quotations omitted). When the first step is satisfied, we presume that the governmental action involved considerations of public policy. Id. at 324. It is the plaintiff's burden to rebut that presumption. Herden, 726 F.3d at 1048.

The district court correctly concluded that the challenged governmental action here was discretionary. Governmental action is discretionary when a governmental policy "predominately uses permissive rather than mandatory language." Herden, 726 F.3d at 1047. Even when some provisions of a policy are mandatory, governmental action remains discretionary if all of the challenged decisions involved "an element of judgment or choice." Hart v. United States, 630 F.3d 1085, 1086 (8th Cir. 2011) (internal quotations omitted). In this case, the VISOP predominantly uses permissive rather than mandatory language. For example, the VISOP offers NVSL scientists ranges for the amount of blood to be used in the tests, the time for initial incubation, and the length of thaw times for the frozen samples. Moreover, the VISOP does not provide any guidance on how to interpret stained slides for fluorescence or what to do if these slides appear inconclusive for PRRSv—the challenged decisions here.

Compart argues that our decision in McMichael v. United States, 751 F.2d 303 (8th Cir. 1985) compels the opposite conclusion. In that case, the plaintiffs claimed that government inspectors failed to regularly perform a 51 step safety compliance check. Id. at 307. We concluded that the safety compliance check was mandatory,

not discretionary, as it listed "a number of precise inspections to perform." Id. at 307. A rote 51 step inspection list is not analogous to the VISOP which consisted of mainly permissive guidelines that allowed NVSL personnel to use their judgment for most testing and reporting decisions.

The district court also correctly determined that Compart did not rebut the presumption that NVSL PRRSv testing and reporting decisions was susceptible to policy analysis. One of the hallmarks "of a decision susceptible to policy analysis is one in which a federal employee must weigh or balance competing interests." Herden, 726 F.3d at 1050. The agency's decision here involved weighing several competing interests when testing and reporting for the virus. Incorrectly reporting the results as negative could have undermined China's confidence in the government's PRRSv testing procedures. Yet incorrectly reporting the results as positive could have resulted in harsh consequences for Compart and undermined United States pork producers' confidence in NVSL. As the district court concluded, determining "what to do in this sensitive situation plainly involved . . . considerations of public policy."

Compart argues that the testing and reporting merely involved professional scientific discretion, rather than considerations of public policy. It claims that this case is similar to Lather v. Beadle County, 879 F.2d 365 (8th Cir. 1989), where the plaintiff alleged that a government psychologist negligently evaluated him. In that case we concluded that the psychologist's conduct did not involve considerations of public policy because the treatment was "professional [and] nongovernmental." Id. at 368. Compart's reliance on Lather is misplaced. There, the psychologist had a "singular goal, i.e., providing appropriate medical care to a patient" and was not faced with weighing competing interests like NVSL was required to do here. See Herden, 726 F.3d at 1051 (distinguishing Lather).

Since NVSL's testing and reporting of Compart's swine was governed by discretionary governmental procedures and susceptible to policy analysis, the

discretionary function exemption precludes jurisdiction over Compart's negligence claims.

## III.

For these reasons we affirm the district court's dismissal of this action.

_____